UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

SANDY C.,[1]       )
                   )
   Plaintiff,      )
                   )
v.                 )   Case No. 5:21-cv-275
                   )
KILOLO KIJAKAZI,[2] Acting Commissioner )
of Social Security, )
                   )
   Defendant.      )

**OPINION AND ORDER**
**(Docs. 6, 7)**

Plaintiff Sandy C. brings this action under 42 U.S.C. § 405(g) seeking reversal of the decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) and supplemental security income (SSI). (Doc. 1.) Currently pending is Plaintiff's motion to reverse the Commissioner's decision (Doc. 6) and the Commissioner's motion to affirm (Doc. 7). For the reasons stated below, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and the matter is REMANDED for further proceedings and a new decision.

**Background**

Plaintiff was 40 years old on her alleged disability onset date of February 1, 2019. At her October 7, 2020 hearing, she testified to physical and mental difficulties including muscle weakness, numbness in her upper and lower extremities, widespread pain, post-traumatic stress

---

[1] Consistent with the May 1, 2018 guidance of the Committee on Court Administration and Case Management, the court uses only the first name and last initial of non-government parties for opinions in social security appeals.

[2] The court has corrected the Complaint's misspelling of Dr. Kijakazi's name.

disorder ("PTSD"), social anxiety, and depression. (AR 42–43, 49–50, 53.) She held a series of jobs in the 15 years prior to her alleged onset date, including granite countertop installer; stocking, counter, and cashier worker at a deli; nurse assistant and cook helper; self-employed personal care assistant; Dollar Tree store manager; and farm worker. (AR 41–42, 57–59.) Her most recent employment was as a furniture finisher; she left that job in early 2019 and has not worked since then. (AR 41.)

Plaintiff has a high school education. (AR 40.) She attended a Licensed Nursing Assistant (LNA) night course in 2018. (*Id.*) She has an adult daughter. (*See* AR 47.) She testified that she has been sober since she restarted counseling in approximately February 2019. (AR 49.) At the time of her October 7, 2020 hearing she was staying with a friend and looking for housing. (AR 46.)

Plaintiff testified that in a typical day she takes two hours in the morning "trying to adjust my body to stop it from just seizing up"; then she sits or lies down and spends the majority of her day "readjusting." (AR 44.) She searches for apartments online and uses Facebook, prepares quick meals, and does the dishes. (AR 45, 47.) She takes public transportation to counseling and doctor's appointments. (AR 46–47.) She wakes up several times at night to walk or stretch. (AR 45–46.)

Plaintiff applied for DIB and SSI on June 24, 2019. (AR 100–101.) Those claims were denied initially on October 14, 2019 (*id.*) and on reconsideration on February 5, 2020 (AR 102, 110). Administrative Law Judge (ALJ) Thomas Merrill conducted the requested hearing on October 7, 2020. (AR 34–69.) Plaintiff testified at the telephonic hearing[3] and was represented by attorney Craig Jarvis. Vocational expert (VE) James Soldner also testified. ALJ Merrill

---

[3] The hearing was conducted over the phone due to the COVID-19 pandemic.

issued an unfavorable decision on November 3, 2020. (AR 13–28.) The Appeals Council denied Plaintiff's request for review (AR 1) and Plaintiff filed her Complaint in this court on November 23, 2021 (Doc. 1).

## ALJ Decision

Social Security Administration regulations set forth a five-step, sequential evaluation process to determine whether a claimant is disabled. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). First, the Commissioner considers "whether the claimant is currently engaged in substantial gainful activity." *Id.* Second, if the claimant is not currently engaged in substantial gainful activity, then the Commissioner considers "whether the claimant has a severe impairment or combination of impairments." *Id.* Third, if the claimant does suffer from such an impairment, the inquiry is "whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments." *Id.* Fourth, if the claimant does not have a listed impairment, the Commissioner determines, "based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment." *Id.*

Finally, if the claimant is unable to perform past work, the Commissioner determines "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see* 20 C.F.R. §§ 404.1520, 416.920.[4] The claimant bears the burden of proving her case at steps one through four. *McIntyre*, 758 F.3d at 150. At step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

---

[4] Since the regulations for DIB (20 C.F.R. § 404.101 et seq.) and SSI (*id.* § 416.101 et seq.) claims are the same in all respects that are material to the issues in this case, the court hereinafter cites only to the DIB regulations.

Employing that sequential analysis in his November 3, 2020 decision, ALJ Merrill first determined that Plaintiff has not engaged in substantial gainful activity since February 1, 2019, the alleged onset date. (AR 16.) At step two, the ALJ found that Plaintiff has the following severe impairments: bilateral carpal tunnel syndrome and depression disorder. (*Id.*) The ALJ also found that Plaintiff has the following other conditions but that they are not "severe" as defined by the regulations: spondylosis with neck and back pain, bunions, and alcohol dependence in remission. (AR 16–17.) The ALJ further noted references in the record to other potential impairments—including fibromyalgia, neurogenic thoracic outlet syndrome, cogwheel rigidity, neuropathy, and blurry vision—but held that none of those conditions are medically determinable impairments. (AR 17.) At step three, the ALJ found that none of Plaintiff's impairments meets or medically equals the severity of one of the listed impairments. (AR 18.)

Next, the ALJ determined that Plaintiff has the residual functional capacity (RFC) to tolerate routine task changes and perform light work as defined in 20 C.F.R. § 404.1567(b) "except that the claimant can handle, finger, and feel bilaterally." (AR 21.) Although the RFC as stated on page 9 of the ALJ's decision does not specify how frequently Plaintiff can handle, finger, and feel, page 13 of the decision indicates that the ALJ found Plaintiff could perform those functions "frequently." (AR 25.)

At step four, the ALJ found that Plaintiff is unable to perform any of her past relevant work. (AR 26.) Finally, at step five, considering the RFC and Plaintiff's age, education, and work experience, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*) The ALJ indicated that Plaintiff could perform occupations such as cashier II, mail clerk, and office helper. (AR 27.) The ALJ

concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since February 1, 2019. (*Id.*)

## Standard of Review

The Social Security Act defines disability, in pertinent part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act, a claimant will only be found disabled if his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

In considering the Commissioner's disability decision, the court conducts "a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 175–76 (2d Cir. 2013) (per curiam)); *see also* 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. Nat'l Lab. Rels. Bd.*, 305 U.S. 197, 229 (1938)). The "substantial evidence" standard is even more deferential than the "clearly erroneous" standard; facts found by the ALJ can be rejected "only if a reasonable factfinder would *have to conclude otherwise.*" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

The court is mindful that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Plaintiff advances four arguments on appeal: (1) substantial evidence does not support the ALJ's finding that fibromyalgia is not one of Plaintiff's medically determinable impairments; (2) substantial evidence does not support the ALJ's finding that Plaintiff's bunions are non-severe; (3) the ALJ failed to give an adequate function-by-function assessment of Plaintiff's manipulative abilities; and (4) the ALJ failed to properly support his findings on the persuasiveness of medical opinions. (Doc. 6 at 2.) The Commissioner maintains that the ALJ considered the evidence in accordance with the applicable regulations and that substantial evidence supports his findings. (Doc. 7 at 1.)

**I.    Fibromyalgia**

In progress notes for a September 15, 2020 visit to the Dartmouth-Hitchcock Medical Center's neurology clinic, Dr. Vijay Renga assessed as follows:

> [Patient] with history of anxiety, PTSD, DJD [degenerative joint disease] neck, chronic pain / paresthesia etc referred for evaluation of ? Parkinsonism ? Neuropathy or radiculopathy. On evaluation she has some tremulousness but no rigidity or bradykinesia or other features to suggest Parkinson. Brisk DTRs [deep tendon reflexes] bilaterally. Multiple tender points suggestive of fibromyalgia. Prior imaging of brain unremarkable. EMG/NCS [electromyogram / nerve conduction studies] unremarkable except for incidental mild CTS [carpal tunnel syndrome] bilateral.

(AR 980.) Dr. Renga listed several conditions as "impressions" after his examination, including fibromyalgia. (*Id.*) He stated that Plaintiff's symptoms "seem[] related to nerve sensitivity from fibromyalgia" and recommended "Rheumatology evaluation / treatment of fibromyalgia." (*Id.*) He further recommended a "[w]orkup for systemic / nutritional causes including Vit D / B12 / Liver enzyme / TSH etc on follow up with PCP." (*Id.*) The record does not reveal any

6

rheumatology evaluation or treatment between September 15, 2020 and the November 2020 ALJ decision.

Under Social Security Ruling 12-2p, a claimant establishes a medically determinable impairment ("MDI") of fibromyalgia ("FM") under either of two sets of criteria. The first is based on the 1990 ACR Criteria for the Classification of Fibromyalgia. The second set of criteria is based on the 2010 ACR Preliminary Diagnostic Criteria. The ALJ concluded that Dr. Renga's evaluation does not satisfy the criteria for medically determinable fibromyalgia under either set of criteria in SSR 12-2p. (AR 17.) He found that Dr. Renga's examination did not include specific positive tender points and that there was "no evidence that providers ruled out other possible co-occurring conditions." (*Id.*) He noted that Dr. Renga made only a "provisional diagnosis" and recommended a rheumatology evaluation to confirm it. (*Id.*)

SSR 12-2p states that "[w]e will find that a person has an MDI of FM if the physician diagnosed FM and provides the [requisite] evidence . . ., and the physician's diagnosis is not inconsistent with the other evidence in the person's case record." SSR 12-2p, 2012 WL 3104869, at *2. The Commissioner argues that Dr. Renga supplied only the suggestion of "a *possible* diagnosis of fibromyalgia." (Doc. 7 at 5.) She further contends that the record lacks the requisite evidence under the 1990 ACR Criteria and the 2010 ACR Preliminary Diagnostic Criteria. (*Id.* at 4–7.) The court considers these issues in turn.

A.  **Diagnosis of FM**

Dr. Renga's notation of tender points "suggestive of fibromyalgia" and his "impression" of FM might not be equivalent to a conclusive diagnosis of that condition.[5] On the other hand,

---

[5] *See Hulett v. Colvin*, No. 2:14-CV-1892-VEH, 2016 WL 393739, at *4 (N.D. Ala. Feb. 2, 2016) (no evidence of medical diagnosis of FM where FM was listed only in the context of past medical history, problem lists, and impressions); *Kitchen v. Comm'r of Soc. Sec.*, No. 12-

7

cases within the Second Circuit appear to equate impressions with diagnoses. *See, e.g., Cabreja v. Colvin*, No. 14-CV-4658 (VSB), 2015 WL 6503824, at *5 (S.D.N.Y. Oct. 27, 2015); *Lane v. Astrue*, 267 F.R.D. 76, 79 (W.D.N.Y. 2010) (doctor "added a diagnosis of 'fibromyalgia' to his list of 'Impressions'").[6] And the ALJ himself described Dr. Renga's assessment as a "diagnosis"—albeit a "provisional" one. (AR 17.) The court concludes that, for purposes of SSR 12-2p, the record includes a fibromyalgia "diagnosis."

B.   **Evidence of FM**

To meet the 1990 ACR Criteria, the patient must have: (1) a history of widespread pain that has persisted for at least three months; (2) at least 11 specific positive tender points on physical examination; and (3) evidence that other disorders that could cause the symptoms or signs were excluded. SSR 12-2p, 2012 WL 3104869, at *2–3. To meet the 2010 ACR Preliminary Diagnostic Criteria, the patient must have: (1) a history of widespread pain; (2) "[r]epeated manifestations of six or more FM symptoms, signs, or co-occurring conditions";

---

cv-12991, 2013 WL 2200392, at *2 (E.D. Mich. May 20, 2013) ("Notwithstanding his diagnostic impression that plaintiff suffered from fibromyalgia, the treating physician's notes contain no conclusive diagnosis of the condition.").

[6] Courts in other circuits have held similarly. *See, e.g., Timothy P. v. Saul*, No. 19-cv-03976-EMC, 2020 WL 3972590, at *5 (N.D. Cal. July 14, 2020) ("Notably, Ninth Circuit caselaw uses the phrase 'diagnostic impression' and 'diagnosis' interchangeably."); *Martin v. Berryhill*, No. 5:17cv256-CJK, 2019 WL 318253, at *6 (N.D. Fla. Jan. 24, 2019) ("impression" section of treatment note listed diagnoses); *Schwartz v. Berryhill*, No. 16-573 (MN), 2019 WL 117987, at *7 n.5 (D. Del. Jan. 7, 2019) (consultative physician's "impressions" included FM diagnosis); *Jennifer C. v. Berryhill*, No. 2:17-cv-00233-JAW, 2018 WL 2552161, at *8 (D. Me. June 4, 2018) (equating "diagnosis" and "impression"), *report and recommendation affirmed*, 2018 WL 4558174 (D. Me. Sept. 21, 2018); *Sinclair v. Berryhill*, 266 F. Supp. 3d 545, 554 (D. Mass. 2017) ("The simple impression or diagnosis of fibromyalgia, without more, does not relieve Sinclair of her burden of proof."); *Case v. Colvin*, No. 4:15-CV-70-TLS, 2017 WL 347529, at *4 n.2 (N.D. Ind. Jan. 24, 2017) (rejecting narrow definition of "diagnosis" as excluding treating rheumatologist's "impressions"); *Valle v. Sullivan*, No. Civ. 88-0736 PHX-EHC, 1989 WL 280312, at *2 (D. Ariz. Oct. 6, 1989) ("Dr. Kennedy's impression (diagnosis) was fibrositis/fibromyalgia syndrome . . . .").

and (3) evidence that other disorders that could cause the repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.  SSR 12-2p, 2012 WL 3104869, at *3 (footnote omitted).

Neither the ALJ nor the Commissioner dispute the presence of the first common criterion—a history of widespread pain.  But the Commissioner notes that both sets of criteria require "evidence that other disorders that could cause the symptoms or signs were excluded" and argues that "substantial evidence supports the ALJ's finding that the record does not show that Dr. Renga ruled out other disorders that could cause Ms. Cyr's symptoms."  (Doc. 7 at 4.) Plaintiff maintains that her doctors "have rule[d] out a wide range of other possible explanations" for her symptoms.  (Doc. 6 at 5.)

Notably, the criteria do not require an "opinion" ruling out other potential causes of signs or symptoms, but only "evidence" that other disorders were excluded.  *Rodriguez v. Comm'r of Soc. Sec.*, No. 20 Civ. 2819 (AJN) (SLC), 2021 WL 4462000, at *14 (S.D.N.Y. June 16, 2021), *report and recommendation adopted*, 2021 WL 4461272 (S.D.N.Y. Sept. 29, 2021).[7]  Dr. Renga's September 15, 2020 progress note includes such evidence.  His clinical evaluation ruled out Parkinson's disease.  (AR 980.)  He also found no evidence of neuropathy, radiculopathy, or

---

[7] *James D. P. v. Saul*, No. 2:18-cv-00250-JHR, 2019 WL 4784601 (D. Me. Sept. 30, 2019)—cited by the Commissioner—is distinguishable.  The court in that case found no error in the ALJ's conclusion that the plaintiff failed to meet his burden of demonstrating that he had an MDI of fibromyalgia.  *Id.* at *4.  One examining rheumatologist in that case ordered tests to rule out other causes of the plaintiff's symptoms, including blood tests and imaging.  *Id.*  That rheumatologist, however, "did not discuss whether he had reached a firm diagnosis of fibromyalgia based on the exclusion of other possible causes."  *Id.*  A consulting rheumatologist also ordered testing to rule out other causes, but the court reasoned that the plaintiff "points to no follow-up note . . . interpreting the results or, more importantly, confirming the diagnosis of fibromyalgia based on ruling out other possible causes."  *Id.* at *5.  It appears that the *James D. P.* court found that neither rheumatologist actually diagnosed FM.  This court respectfully declines to follow *James D.P.* to the extent that it might have imposed a standard higher than that articulated in *Rodriguez*.

neurogenic thoracic outlet syndrome. (*Id.*) Plaintiff's CTS was "incidental," "mild," and "not symptomatic." (*Id.*) He also reviewed brain imaging, which was "unremarkable." (*Id.*)

It is true that Dr. Renga's progress note does not discuss all possible causes of Plaintiff's signs and symptoms. For instance, SSR 12-2p lists the following disorders that may have signs or symptoms similar to those resulting from FM: "rheumatologic disorders, myofascial pain syndrome, polymyalgia rheumatica, chronic Lyme disease, and cervical hyperextension-associated or hyperflexion-associated disorders." SSR 12-2p, 2012 WL 3104869, at *3 n.7. Dr. Renga's note does not analyze all of those disorders. And Dr. Renga recommended a workup for possible other "systemic / nutritional causes." (AR 980.)

But SSR 12-2p does not specifically require exclusion of "all" other potential disorders; it requires only the exclusion of "other disorders." SSR 12-2p, 2012 WL 3104869, at *3. Cases within the Second Circuit do not impose a higher standard. *See Rodriguez*, 2021 WL 4462000, at *14 (sufficient evidence of exclusion of other causes where doctor's EMG testing was negative for CTS); *Corieri v. Saul*, No. 19-CV-094-MJR, 2020 WL 4584167, at *4 (W.D.N.Y. Aug. 10, 2020) (sufficient evidence of exclusion of other causes where pain management treating physician distinguished the different causes of the plaintiff's pain due to combination of FM, occipital neuralgia, and spondylosis/facet syndrome); *Poler v. Comm'r of Soc. Sec.*, No. 18-CV-1298, 2020 WL 1861920, at *4 (W.D.N.Y. Apr. 14, 2020) (physician distinguished patient's FM-related symptoms from pains associated with cervical disc degeneration and cervical spondylosis); *Diaz v. Comm'r of Soc. Sec.*, No. 18-CV-6224P, 2019 WL 2401593, at *5 (W.D.N.Y. June 7, 2019) (rejecting ALJ's requirement of showing "significant evidence" that other disorders have been excluded; holding that SSR 12-12p requires only "evidence").

In the court's view, the ALJ's conclusion that "there is no evidence that providers ruled out other possible co-occurring conditions" (AR 17) is unsupported by any substantial evidence. The analysis does not end there, however, because the Commissioner asserts that the ALJ properly found other criteria to be absent. The court considers those arguments next in the context of the remaining requirements under the 1990 and 2010 ACR criteria.

### 1. The 1990 ACR Criteria

The remaining criterion to consider under the 1990 ACR Criteria is the requirement of "at least 11 specific positive tender points on physical examination." SSR 12-2p, 2012 WL 3104869, at *3. Plaintiff states that "multiple doctors have noted tender points over the years" but she concedes that "no one has ever counted them up pursuant to the old 1990 criteria." (Doc. 6 at 4.) The court's review of the record confirms the notation of some tender points, but it does not appear that at least 11 such points have been documented on physical examination.

### 2. The 2010 ACR Preliminary Diagnostic Criteria

The remaining criterion to consider under the 2010 criteria is the requirement of "[r]epeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." SSR 12-2p, 2012 WL 3104869, at *3 (footnotes omitted). The ALJ's analysis does not explicitly discuss this criterion. Plaintiff asserts that she has at least six FM signs or co-occurrent conditions. (Doc. 6 at 4.) The Commissioner contends that many of the alleged signs or conditions are not "repeated" as required by SSR 12-2p. (Doc. 7 at 6.)

The Commissioner does not appear to dispute that the record reveals repeated manifestations of (1) depression, (2) anxiety, (3) chest pain, and (4) numbness and tingling. The

court's review of the record confirms repeated manifestations of these symptoms or signs during the relevant time period. (*See, e.g.*, AR 446, 512, 522, 534, 593, 625, 717, 781 (depression); AR 456, 512, 521, 522, 527, 530, 533, 536, 571, 593, 596, 717, 781 (anxiety); AR 432, 453, 482, 690 (chest pain); AR 411, 414, 427, 533, 623, 681, 688, 697, 714, 758, 936, 975 (numbness and tingling).)

The Commissioner maintains, however, that none of Plaintiff's other symptoms, signs, or co-occurring conditions "repeatedly" manifested during the relevant period. (Doc. 7 at 6.) The court rejects that argument for two reasons. First, the ALJ did not discuss or rely on the "repeatedly" requirement "and the court cannot affirm the ALJ's decision on different grounds from those considered by the agency." *Leonard K. v. Comm'r of Soc. Sec.*, No. 2:19-cv-00011, 2020 WL 7586433, at *6 (D. Vt. Dec. 22, 2020). Second, even upon consideration of this issue, the court finds the Commissioner's position unpersuasive.

The court agrees that the record lacks indications of repeated manifestations of some of Plaintiff's other symptoms, signs, and conditions. Plaintiff cites only one report of heartburn, and that was in 2016—well before the alleged onset date. (AR 928.) Some records indicate a past medical history of gastroesophageal reflux disease ("GERD") (*see* AR 709, 975), but treatment notes during the relevant period do not list GERD as a complaint; one contemporaneous note specifically states no GERD symptoms (*see* AR 432).

On the other hand, the record reveals several other symptoms, signs, or co-occurring conditions that occurred repeatedly. Plaintiff experienced abdominal pain for a period of six months prior to June 2016 (AR 899) and reported intermittent pain in her upper abdominal area in March 2019 (AR 432). She reported blurry vision in March 2019 (AR 432), February 2020 (AR 758), June 2020 (AR 690), and July 2020 (*see* AR 745 ("Both eyes blurry

x6 weeks . . . .")). She reported issues with sleep or insomnia on numerous occasions. (AR 456, 515, 623, 624, 779, 936, 976.) She also reported headaches or migraines both before and after the alleged onset date. (AR 408 (migraine June 2014); AR 928 (headaches May 2016); AR 936 (migraines November 2016); AR 544 (chronic post-traumatic headache December 2017); AR 745 ("HA's more frequently").) The Commissioner correctly notes that Plaintiff denied these symptoms at times, but the criterion requires only "repeated" manifestations, not constant or uninterrupted manifestations.

### C.     The Error is Not Harmless

The court concludes that no substantial evidence supports the ALJ's determination that Plaintiff's fibromyalgia is not a medically determinable impairment. The Commissioner has not argued that any error on this point might be harmless. Nor would that argument be persuasive. *See, e.g., Penny Lou S. v. Comm'r of Soc. Sec.*, No. 2:18-cv-213, 2019 WL 5078603, at *8 (D. Vt. Oct. 10, 2019) ("[T]he step-two harmless error doctrine is inapplicable to a determination that an impairment is not medically determinable."); *Diaz*, 2019 WL 2401593, at *5 (same). Here, as in *Penny Lou S.*, "the ALJ's error in finding that Plaintiff's fibromyalgia was not a medically determinable impairment impacted the subsequent steps of the disability determination process because, once the ALJ found the impairment to be not medically determinable, he was not required to consider it in determining Plaintiff's RFC." 2019 WL 5078603, at *8.

### II.    Remaining Issues

In light of the conclusions above, "the ALJ is required to reconsider the claim starting at step two." *Id.* at *9. It is therefore unnecessary to consider Plaintiff's remaining arguments concerning bunions, manipulative abilities, and the analysis of opinion evidence. The court will

remand the claim for reevaluation of Plaintiff's fibromyalgia and reconsideration of each successive step of the sequential disability analysis.

## Conclusion

Plaintiff's motion to reverse (Doc. 6) is GRANTED, the Commissioner's motion to affirm (Doc. 7) is DENIED, and the matter is REMANDED for further proceedings and a new decision consistent with this ruling.

Dated at Rutland, in the District of Vermont, this 4th day of August, 2022.

Geoffrey W. Crawford, Chief Judge
United States District Court